## J. H. CALDWELL AND ANOTHER V. M. C. FRAIM.

1—The statute of this State (Paschal's Digest, Art. 5296,) confers on landlords an absolute right to make themselves parties to suits brought against their tenants for the recovery of land, though no rule is prescribed as to the manner in which they may become parties.

2—The regular and most convenient mode of practice would be to apply, by oral motion, for leave of the court to be made a party ; but this cause is not an imperative requirement, and the failure to preserve it is a formal rather than a substantial error.

3—In an action of trespass to try title and for damages incident thereto, if no answer be filed, the allegations of the petition are taken *pro confesso* by default, and nothing more is needed than for the jury, under a writ of inquiry, to determine, from the evidence, the amount of unliquidated damages for the mesne profits. There is no occasion, in such case, for the plaintiff to adduce any proof of his title.

4—When a deed retains a lien on the land sold to secure payment of the purchase money, it does not invest the vendee with absolute title, nor with the right of possession as against the vendor, until the purchase money be actually paid, and, until then, the vendee cannot maintain suit against the vendor for possession.

5—Under our system of jurisprudence, the vendor, in such case, occupies the double attitude of vendor and mortagee, until payment of the purchase money.

6—In States where the distinctive jurisdictions of law and equity are maintained, such a deed would be treated as a mere title bond, and could not be used as evidence in an action of ejectment for the purpose of showing title in the vendee.

7—In this State a perfect title is the union of both the legal and the equitable title, which may be accomplished by our courts in any proper case, if the necessary parties are brought in.

APPEAL from McLennan.   Tried below before the Hon. A. J. Evans.

M. C. Fraim brought this action to the Spring term (1869) of the District Court of McLennan county, against J. H. Caldwell and Julius Griesenback, for three small parcels of land in the vicinity of Waco, comprised in what is known as the Harris place, and also as the Hamilton place.   The petition averred that on the 18th of March, 1868, Charles A. Hamilton and his wife, M. M. Hamilton, sold and conveyed the land to the plaintiff, and delivered possession of it to him ; that on the 27th of November, 1868, the defendants, agents and tenants of said Charles A. and M. M. Hamilton, entered upon the land and dispossessed the plaintiff; that the place was well improved and in a good condition for cultivation, having a house and all necessary out-houses, stables, cribs, etc., thereon; that the property was worth three thousand dollars, and the rents were worth at the rate of sixty-five dollars per month.

Petitioner prayed for a writ of sequestration, and that he have judgment for the title and possession of the land, and for the amount of the rents and revenues, etc.

There was service of citation on Caldwell and Griesenback, but they filed no answers.

On the 28th day of May, 1869, M. M. Hamilton, joined by her husband, filed an answer, which entered their appearance as the defendants to the suit, and denied all the allegations of the petition.

The case came to trial on the 29th of June, 1869.   The plaintiff proved by Caldwell that he rented the land from Hamilton and wife in November, 1868, and that he, and Griesenback as his tenant, held possession of it until after the suit was brought and until they were dispossessed by service of the writ of sequestration issued in this cause.   Plaintiff also proved that he had contracted to rent out the place for forty-two and a half dollars per month.   He also put in evidence his deed from Hamilton and wife.   The consideration expressed

in it was a promissory note for $1719, and an obligation for seventy-six beef cattle, made to Fraim by other parties, and by him transferred to Hamilton and wife.

The deed purported in the usual terms to convey and warrant the title to the land, but at the conclusion stated that "a lien is retained upon the property herein conveyed for the payment of the writings obligatory described above."

It was duly acknowledged by Hamilton and his wife, and was filed for record on the day of its execution, March 18th, 1868.

There was no evidence that Fraim ever was in actual possession of the land.

Although, as already stated, the Hamiltons entered an appearance as parties and filed their answer, on the 28th of March, 1869, the case seems to have progressed to trial as though Caldwell and Griesenback were the only parties defendant. The entries in the record take no notice of the Hamiltons; the judge's charge to the jury treats the issues as though they were confined to the plaintiff on the one side, and Caldwell and Griesenback on the other; and the judgment·of the court is in·favor of the plaintiff and against Caldwell and Griesenback, taking no notice of the Hamiltons.

There was a motion for a new trial, based on alleged error in the instructions to the jury, and complaining that the jury found contrary to the law and evidence. As one cause for overruling this motion, the entry recites "and because it appears to the court that the paper filed in the cause, purporting to make Charles A. and M. M. Hamilton, as landlords, parties defendant, and purporting to be their answer, was not brought to the attention of the court nor read to the jury, and its existence unknown to the plaintiff until after ·the verdict and judgment in this cause was rendered."

Caldwell and Griesenback appealed.

*Norris, McCall & Sleeper*, for the appellants, in support of the position that a deed retaining the vendor's lien does not pass the title, cited 21 Texas, 132; 11 Texas, 597; 27 Texas,

52; 3 Texas, 462; 8 Texas, 237; Id., 602; 6 Texas, 182; 15 Johnson, 456; 3 Wendall, 235. That a mortgagor cannot recover against a mortgagee in possession, without proving payment of the mortgage debt, they cited 12 Texas, 427; 14 Texas, 144; Adams on Ejectment, 60.

*Coke, Herring & Anderson,* for the appellee.—The appellants, Caldwell and Griesenback, were duly served with process, and as the record shows, were present in court by their counsel, and one of them (Caldwell) actually on the stand as a witness; yet they filed no answer, and neither they nor Hamilton and wife apprised the court of the existence of the paper now relied on as the answer of Hamilton and wife, nor did they apprise the jury or the plaintiff's counsel of the fact that such a paper was on file. All these parties stood by, saw the trial progress, heard the charge of the judge—which submitted to the jury issues to be decided between Fraim, the plaintiff, and Caldwell and Griesenback, the defendants, and never once intimated to court, jury or plaintiff the fact of which the record shows they were utterly ignorant: that Hamilton and wife had ever attempted to make themselves parties. Under these circumstances, we think we may, to silence the appellants here, well invoke the principle of law announced by Mr. Justice Catron, and quoted with approbation by Justice Wheeler, in Hopkins v. Donaho, 4 Tex., 338, "he who holds his peace when he ought to have spoken, shall not be heard now that he should be silent." (See, also, Pierson v. Burney, 15 Tex., 273.)

The appellants do not even allude to this paper, denominated the answer of Hamilton and wife, in their motion for new trial, much less did they seek in the court below, even if it had been admissible for them to do it, to have the alleged error corrected. (Paschal's Dig., Art. 1473; Sweeny v. Jarvis, 6 Tex., 44; Hillibrant v. Brewer, 6 Tex., 53.) It was the *privilege* of Hamilton and wife, in a *proper manner*, if they desired it, to be made defendants in this suit. (Paschal's Dig., Art. 5296.) It was not compulsory on them to intervene. It was their

right if they saw fit to exercise it. It was not the right of the appellants, that they should do it. It was a privilege to be enjoyed or declined, at the pleasure of Hamilton and wife, without reference to the appellants.

Now, Hamilton and wife did not move in the court below to have the verdict and judgment set aside. They have not appealed from the judgment of the court below. They have made no complaint that they have been deprived of the privilege of defending this suit. This court must conclude, then, that Hamilton and wife, the parties alone interested in this question, are not aggrieved but satisfied, and if so, certainly the appellants can not complain. (Cheatham v. Riddle, 8 Tex., 166.) If Hamilton and wife had made themselves parties defendant to the suit, and undertaken its defense, and thereby thrown the appellants off their guard, and caused them to believe that it was unnecessary for them to give further attention to it, and then had abandoned the defense, and judgment had been recovered against the appellants, and they were now here asking its reversal, with a record showing a motion to set aside the judgment in the court below on these grounds, sustained by affidavits, which had been overruled in the District Court, their appeal would be a strong one to the equity powers of the court, though, as a matter of law, it is extremely doubtful if they would be entitled to a reversal of the judgment. But such is not the case. They were not thrown off their guard; they were represented by attorneys on the trial. (See the judgment in transcript.) They *knew* that Hamilton and wife were not defending the suit, because they were not heard of in the trial. They did not move in the court below to set aside the judgment, because Hamilton and wife had undertaken the defense, and become the real defendants. In their motion they allege no surprise; they do not pretend that they are not the proper parties defendant. They are heard for the first time to allege in this court that Hamilton and wife are the parties against whom the judgment below should have been rendered. (Watson v. Newshom, 17 Tex. R., 437.)

It is argued by appellant's counsel, that the filing of the so-called answer of Hamilton and wife, by virtue of the statute, (Art. 5296, Pasch. Dig.) made Hamilton and wife the sole defendants in the suit, and that from that time the appellants ceased to be parties.

We deny that the filing of this paper in the manner it was done, makes Hamilton and wife parties to the suit at all. The universal practice under this statute, in actions of trespass to try title, has been for the landlord to ask leave of the court to come in and defend the suit. This, of course, gives notice to the court and the plaintiff of the presence of the new party, a notice which, according to all the rules of law, they should have. The wisdom of that practice needs no better illustration than is furnished in this case. Having such notice, the plaintiff may make his objections, if he has any, to the application. The court may decide if the applicant is a proper party.

Whether admitted or not, the important consideration of notice to all parties of what was transpiring in the case, is accomplished. The court would not be ignorant, nor would the plaintiff, of the names of the parties defendant, as they were in this case, if the position of appellants' counsel be correct. The principles of law governing actions of ejectment, discarding its fictions, govern the trial of real actions under our statute. (Art. 5292, Pasch. Dig.) In actions of ejectment the landlord is only made a party by order of the court, entered on the minutes. (Tillinghast's Adams, p. 408, form 29.)

An "intervenor," as known in our practice, is one who has a right, on general and well established legal principles, to become a party to a suit pending between other parties. In actions of trespass to try title, when a tenant in possession is sued, the landlord, by virtue of the statute, has a right to intervene. The right is secured to the former by *law* as fully as it is to the latter. Mr. Sayles, in his work on Practice, § 125, says: "An intervenor is one who, having an interest in the subject matter, voluntarily, or at the instance of either party,

is made a party to the suit, and may claim adversely to either or both."

The landlord, under the statute, stands in the same position, has the same rights, and is affected with the same duties and obligations that lie upon the "intervenor" in general practice. Their position and status, is the same in all essential respects. Mr. Sayles, in § 156, succinctly groups the rights, obligations, and duties of an "intervenor" thus: "Any one who is competent to sue or to be sued may, *by leave of the court, and upon notice to the parties*, intervene in a suit between other parties, when he has an interest in the subject matter of the suit, which can be affected by the decree, and he may join the plaintiff in asking the relief claimed by him, or any relief appropriate to the suit, or he may join the defendant in resisting the plaintiff's claim, or he may oppose the relief claimed by both parties." See, on this question, the numerous authorities referred to by Mr. Sayles, and among others the very section of the statute authorizing landlords to make themselves parties, when their tenants are sued. The same legal principle which requires the "intervenor" to ask leave of the court, and to give notice to the parties, is equally applicable to the landlord, who seeks to defend a suit brought against his tenant, and the universal practice under this statute is based upon it.

But the appellant's counsel contends in his argument, that because the plaintiff below alleged in his petition that the defendants, Caldwell and Griesenback, entered upon the land, as tenants of Hamilton and wife, therefore it was unnecessary for Hamilton and wife to ask leave of the court to be made parties defendant. This is certainly a most lame and impotent conclusion from the premises. If the statute was compulsory upon the landlord, to come in and defend his tenant in possession, there would be some plausibility, but there is no soundness in the argument, when it is considered that the statute leaves it purely voluntary with the landlord, whether he comes in to defend or not, as we have seen above, and that the asking the leave of the court, and giving notice to the parties, is required

of him simply to indicate his *election* to come in and defend, in order that all concerned may be prepared to meet the new party in the case, and probably new issues which he makes, the fallacy of the position is transparent. How can the court and the parties know that the landlord will choose to come in and defend? Does a knowledge of the fact that he is the landlord of the tenant assist them in arriving at a conclusion that he will or will not come in?

In reply to that portion of the argument of appellants' counsel, which contends that the filing of the answer of Hamilton and wife was constructive notice to the plaintiff of its presence and contents, we simply refer the court to the judgment of the District Court, overruling the motion for new trial, which recites that the existence of this paper was *unknown* to court, jury and plaintiff until after verdict and judgment had been rendered. (Hopkins v. Donoho, 4 Texas; Pierson v. Burney, 15 Texas.)

The verity of this record can not be denied or controverted. The court knew the signification of the language used, and must be presumed to have meant what it said, and to have been justified by the facts in saying it. (Paris v. Du Bose, 27 Tex., 6.)

We conclude, then, that Hamilton and wife have not been made parties to this suit, in any mode known to the law, and have not been recognized by the court below as parties, and that the appellants have not been surprised or injured by their failure to become parties defendant, and undertake the defense, and therefore have no right to complain.

But suppose the position of appellants' counsel was correct, and that Hamilton and wife did become parties defendant to the suit, by filing the plea, the same conclusion would inevitably follow, the appellants stood by, and saw the trial progress without reference to Hamilton and wife, without calling attention of court or plaintiff to their presence, when they were not known to be in court, the appellants treated in the charge of the court, verdict of the jury, and judgment, *without objection*

from them as the only defendants in the case, would most clearly not be heard in this court, to say that other persons and not themselves were the proper defendants.  Nor would Hamilton and wife, if they had appealed, have been in a better position.  The conclusion is irresistible that Hamilton and wife, with the consent and concurrence of the appellants, abandoned the defense of the case.  If the plaintiff, Fraim, is satisfied with the judgment, the appellants certainly can not complain of it.

But the appellants' counsel contends that if Hamilton and wife became parties defendant, the appellants *ipso facto* ceased to be parties to the suit, because the statute authorizes the landlord to enter himself as "the defendant."  If disposed to be technical and *literal* in construing this clause of the statute, at the expense of its plain sense and meaning, as appellants' counsel has been, we could reply to him that by his construction of the statute, parceners, joint tenants and tenants in common, whose tenants in possession had been sued, would be excluded from its benefits, and so would Hamilton and wife, because they would be " the defendants plural," instead of " the defendant " singular, so much stickled for by counsel.  But a graver objection, we submit, exists to the construction contended for by appellants' counsel.  Section 11 of the bill of rights, in its last clause, provides that " all courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law."  (Pasch. Dig., 48.)  The District Court act, Art. 1427, Pasch. Dig., provides that " the petition may be filed by the plaintiff or attorney, and shall set forth clearly the names of the parties and their residence, if known, with a full and clear statement of their cause of action, and such other allegations pertinent to the cause, as he may deem necessary to sustain the suit, and also a full statement of the nature of the relief he requests of the court."

This court has held repeatedly, in construing this section of the statute, that the plaintiff must, in his petition, state " the peculiar facts and circumstances of his case."

" If a legal or equitable right be violated, the party may, for redress, file his petition, framed according to the peculiar circumstances of his own grievance. The only inquiry is, does the petition disclose a valid right of action? And not whether the form of an action in detinue, trespass or trover is pursued." (3 Texas R., 210; 7 Texas R., 473; 23 Texas R., 436.)

" The pleadings should state the facts truly as they exist and have to be proven, disregarding common law fictions." (14 Texas R., 624.)

Now, in this case, the plaintiff, Fraim, has stated in his petition that Mrs. Hamilton was the owner of the land in controversy, that she and her husband sold and conveyed it to him for a valuable consideration, and that while he was enjoying the possession of the land acquired by this conveyance, the defendants, Caldwell and Griesenback, claiming under a lease from Hamilton, entered upon and took possession of the land and still hold it, receiving the rents and profits, which are alleged to be of considerable value, concluding with a prayer for judgment against Caldwell and Griesenback for possession of the land, and for damages to cover the rents, revenues, etc.

This is a clear statement of facts, which show a valid cause of action against Caldwell and Griesenback. If true as found to be, Fraim was entitled to the judgment he recovered against them. He pursued his remedy against them by due course of law. They had injured him in his " lands," and the constitution guaranteed him a remedy by " due course of law." Can Hamilton and his wife, by coming in and making themselves parties defendant, close the court upon Fraim, so far as these trespassers, who have injured him in his rights, are concerned, when the constitution declares that it shall be open to him to pursue his remedy. But it is said that Fraim can pursue his remedy in some other form, than by " action of trespass to try title," against Caldwell and Griesenback. We reply to this that Fraim has, in the language of the statute quoted above, made a " full and clear statement " of his cause of action in his petition, " he has framed his petition according to the

peculiar circumstances of his own grievance," and that the question arising upon it is not what form of action he pursued, but whether his petition disclosed a valid right of action. (7 Texas, 243.) If this section of statute, properly construed, has the effect claimed for it by appellants' counsel, it is clearly repugnant to the constitution. With such a construction, estates could be entered upon, rents and profits received, waste committed, and the rights of the proprietors irreparably injured with impunity as long as an insolvent vagabond could be found who would come in and play the landlord, and thus shield the guilty trespasser.

The first section of this statute (Paschal's Digest, Art. 5292) provides that "if the jury shall find for the plaintiff, they may, in the same verdict, award damages for the mesne profits," and that "all fictitious proceedings in the action of ejectment shall be abolished." At common law, the mesne profits could not be recovered in the action of ejectment—the title and possession was alone in issue, leaving the successful plaintiff in the ejectment suit, to his action of trespass *vi et armis*, to recover his mesne profits. (Tillinghast's Adams, 380.) If Fraim had a right to recover his mesne profits in this action, as he clearly had, then he certainly, as above shown, could pursue his remedy against those who had wrongfully received them, as Caldwell and Griesenback are shown to have done.

Counsel for the appellants says in his argument that our statutes requires that the action of trespass to try title, shall be tried on its merit, conformably to the principles of trial by ejectment. This is true, but he proceeds: "No principle is better understood than, that in trials by ejectment at common law, after the landlord had made himself the defendant, no judgment could be rendered against the tenant in possession."

Now, we willingly accept the common law as authority on this point, and assert that the tenant in possession is a necessary and proper party, even after the landlord comes in to defend, and that the proceedings are conducted against the

tenant, and judgment always rendered against him. (Tilling-hast's Adams, pp. 407, 408, 409, 410, 411, 412.)   "The ten-ants in possession are the proper, if not the natural defendants to an ejectment, although the landlord has a right to be made a defendant, to prevent his being injured by a combination between the lessor of the plaintiff and his tenant, but he may waive his right, or, *having asserted it, may relinquish it by consent of the lessor of plaintiff.*" (2 Tucker's Com., 168; 2 Call. R., 499.)

Of course, if the landlord leaves the case, the tenant is left to defend himself alone. If it be held that the landlord did assert his right in this case, it must also be held that he relin-quished it, and with the consent of the plaintiff, as no judgment was taken againt him.

In the action of ejectment, it is the *tenant in possession* who comes in under the *consent rule*, and takes the place of the fictitious defendant, known in that action as the casual ejector. This tenant in possession corresponds to the tenant in posses-sion in our action of trespass to try title, and in both actions are entirely distinct persons from the landlord, and on principle and authority remains a principal party to the suit, in both forms of action, although in both the landlord may come in and join them. (Tillinghast's Adams, p. 17.)

The charge of the judge to the jury, wherein, among other things, they are instructed "that said deed from Hamilton, not only showed title in Fraim, but a constant, continuing right of entry and enjoyment in the land," is assigned as error.

The deed referred to in the charge is a regular deed of bar-gain and sale, in the common form, with the usual covenants of warranty.

Such a deed is universally held in the United States to have the same legal effect that feoffment with livery of seisin had at common law. (4 Kent, 483; 4 Kent, 467; 3 Pick. R. 529; 3 N. H. R., 260; 14 John's R., 126; 1 Peters' R., 508; 2 Black's Com., 315, 316; 4 Mass. R., 489; 1 Munf. R., 170.)

Now, it is contended by appellant's counsel, that the reser-

vation of the lien for the payment of the notes, forming the consideration in the deed, qualifies the deed and makes it an executory contract, to become absolute and executed only when the notes are paid. Suppose this position to be correct, *in the absence of all proof* except that furnished by the deed itself, as a matter of legal construction, who, on the day that said deed was executed and delivered, was entitled to the possession of the land conveyed?

We maintain that Fraim, the vendor, was clearly entitled to the possession.

One of the notes was not due until nearly two months after the date of the deed. The other is a note on a *third party*, which had been endorsed to Fraim, both delivered to Hamilton, as shown by the deed. This latter note was due at the time, from this third party. It was not treated as cash, because a lien was retained on the land, to secure its payment, the land to be liable if this *third* party should fail to pay. These notes to be paid in future, (because they were received by the vendor cotemporaneously with the execution of the deed as its consideration,) were delivered by the vendee, and the deed operative *in presenti,* giving the right of immediate possession, was delivered by the vendor.

Such a deed, acknowledging the receipt of the purchase money, appellants' counsel would admit, confers an immediate right of entry, on the vendee. If so, the same language, indicating the same intention on the part of the grantor, must certainly have the same effect, when the consideration is a future instead of a present payment. To hold otherwise would be to make void all sales except those made for cash. If the proper construction of a contract, or an instrument, be as defined by Mr. Powell, " the drawing an inference by the act of reason, as to the intent of an instrument, from given circumstances, upon principles deduced from men's general motives, conduct and action (Pow. on Con., 370), the conclusion is inevitable that Hamilton, in executing a deed with apt words for conferring the right of immediate possession, in consideration of money to

be paid in future, intended to grant the immediate right of entry, and not make that right of entry dependent upon the previous payment of the money. Suppose the consideration of the deed had been three notes, due respectively, two, three and four years after date, reserving a lien for payment, would any one doubt Fraim's right to the possession? If Fraim would have the immediate right of possession, under such a deed, he has it under the deed in this case, because the money is to be paid in the *future*, as much in one case as in the other. If, then, the deed of conveyance from Hamilton gives the right of entry and possession in the land to Fraim, as the deed is *all* the proof in the record on that subject, its production makes out a case which entitles Fraim to recover. But counsel for appellants say that Hamilton and appellants occupy the position of a mortgagee in possession, after condition broken, and can hold until the mortgage is paid off. If true in fact, after Fraim has made out a *prima facie* case, by the production of his deed, this defense should have been *pleaded* and *proved*, by the appellants in rebuttal. In every case cited by appellants' counsel in support of his position, the defense was pleaded, with appropriate averments, and sustained by proof.

In this case no plea at all was filed in defense, and if an appropriate plea had been filed, there was no proof of any sort offered in defense. All the evidence in the record was introduced by Fraim, the plaintiff, on the trial below, and none of it has any bearing on this point, except the deed from Hamilton to Fraim. There is no proof in the record to rebut the *prima facie* case made by this deed for Fraim. There is no proof that appellants are *rightfully* in possession. On the contrary, the deed, the only evidence in the case on the point, by showing a right of entry in Fraim, raises the presumption that the appellants are wrongfully in possession. It is only when the mortgagee in possession is *rightfully* there *by the terms* of the contract that he is entitled to the benefits of the position assumed by appellants' counsel. (Hanney v. Thomp-

son, 15 Tex., 145 ; Duty v. Graham, 12 Tex., 434.)   With ref-
erence, therefore, to the facts of the case and the pleadings, it
is obvious that the charge of the court is correct.

Again :   When the defendant fails to file an answer, on or
before default day, all the allegations in the petition are taken
to be proved, and the plaintiff is entitled to final judgment
against the defendant.   The statute on this subject provides :
" And if the cause of action is liquidated, and proved by any
instrument in writing, the clerk shall, unless a jury is asked
by *either* party, assess the damages of the plaintiff, but if the
cause of action is unliquidated, a jury shall be sworn to
assess the damages of the plaintiff."   So that according to this
clause of the statute, although the defendant may appear and
contest the case before the court and jury ; yet if he does not file
an answer, and the petition discloses a good cause of action, the
plaintiff is entitled to a final judgment.   (Pas. Dig., Art.
1508 ; Watson v. Newsham, 17 Tex., 437 ; Guest v. Rhine, 16
Tex., 550 ; Willard v. Conduit, 10 Tex., 214 ; Swift v. Faris, 11
Tex., 19 ; Long v. Wortham, 4 Tex., 382 ; Hall v. Jackson, 3
Tex., 305 ; Clark v. Compton, 15 Tex., 32.)

No interlocutory judgment by default was necessary, nor
does it affect the judgment, because the record does not
show that it was by default.   (Jackson v. Marshall, 6 Tex.,
328-9.)

LINDSAY, J.—As there seems to have been a misapprehension
of the actual state of the record, both by the court and the
attorneys in this case, at the time of the trial in the District
Court, we deem it most conducive to the certain and final
attainment of the ends of justice to reverse the judgment and
remand the case for a new trial.

It appears, in the recitals of the judgment of the court, over-
ruling the motion for a new trial, that an answer, and the only
answer filed in the case, was made by the landlords of the
original parties defendant to the suit, so characterized by the
petition itself.   Certainly, then, if they were the landlords of

the parties made defendant by the plaintiff in an action upon the title and for the possession of the land, such landlords, so admitted to be in the petition, had a right to be heard in defense of the action, and in vindication of the right of their tenants.

The law confers an absolute right upon landlords to make themselves parties to suits against their tenants. (See Paschal's Digest, Art. 5296.) No particular rule is prescribed in the statutes, by which they may become parties. And without such positive rule of law, it would be more regular, and most convenient, and more in unison with general practice, by oral motion, to ask leave of the court to be made a party. But the failure to do so, is a formal rather than a substantial error. There is no imperative requirement for it. Certain it is, however, as shown by the record, an answer was filed by the landlords of the defendants, which made an issue of fact in the case, and required proof to establish the allegations of the petition. And both the attorneys and the court seem to have acted under the impression that an answer was filed, because the proof was adduced by reading the deed of conveyance from the landlords to the plaintiff; which would have been wholly unnecessary if no answer had been filed, and a judgment by default had been taken against the original defendants, after default day, or was to be taken *nunc pro tunc* in the judgment upon the verdict of the jury. Without answer, the allegations of the petition are taken *pro confesso*, and nothing more is needed than what is technically called a writ of inquiry, for the jury to determine from the testimony the amount of unliquidated damages for the *mesne* profits.

From the record it does not appear that judgment by default was taken before the final judgment; and that final judgment, in which the default judgment is embraced, if not taken before, is never entered until a motion for a new trial is disposed of. The recitals in the judgment disposing of that motion show very clearly, as it actually concedes the fact, that the answer filed was brought to the attention of the court

*during the term.* Hence, any action thereupon, whether by omission or commission, is available in this court as matter of error, if error there be.

Having disposed of this question of the right of landlords to become parties in such actions, as a matter of practice; and as the case has to be re-examined in the court below, it is important to look a little into the doctrine of law, as expounded by the court in the charge or instructions to the jury, which is excepted to in the third assignment of error, and is the pivotal point of the whole case.

An absolute and unqualified deed of conveyance for land, unquestionably gives the right of entry, and so the right of possession to the vendee or purchaser, against the vendor, and against all the world, except against a party who may hold a paramount or superior title. If the deed relied upon in this case was without any reservation, stipulation or condition, undoubtedly the claim to the possession could not be resisted, either by the tenants or by the landlords. The *lien* reserved proclaims the nature of the contract of conveyance, and announces the terms and the conditions upon which the title, legal and equitable, is to become perfect. Till that stipulation is discharged, that condition is fulfilled, there is no absolute investature of title under an instrument like the present. Until the payment of the purchase money is made no suit can be brought against the vendor for the actual possession; nor does the right of possession accrue till such payment by the contracting vendee is actually made. Under our system of jurisprudence the vendor occupies the double position of vendor and mortgagee. He has sold the land, but holds it still as a security for the debt. Here, by reason of the power of the courts to settle both legal and equitable rights in the same action, it is not necessary, in any case, to make an absolute deed in fee, and then take a deed with a defeasance from the vendee for the same land, for the security of the payment of the purchase money. Under such a deed here, however, when the purchase money has been paid, the courts of the

State in the exercise of their equity powers in all actions, will always protect the *actual* possession of the vendee.

In States where the jurisdiction of courts of law and of courts of equity is kept distinct, this deed would be treated as a mere obligation to make title, a mere title bond, and it could not be used as evidence in an action of ejectment by the plaintiff, in a common law court, where a party is required to recover upon the strength of his own *legal* title.  Such court, on such a trial, upon the presentation of such a muniment of title, would remit a party to a court of chancery, which, by compelling the parties to such an instrument to a specific performance, might perfect the legal title in the settlement of the equities between them.  The perfect title under our law is the consolidation of the legal and equitable titles, which our courts may accomplish on the trial of any case, if the proper parties are before them.  The titles must co-exist to entitle a party to recover the actual possession of land against one who holds an equity in it.  Hence, if a mortgagee, who has an interest in land for the security of a debt, is in possession of the mortgaged premises, the mortgagor can not recover from him that possession, until the debt secured by the mortgage has been paid or extinguished by the rents and profits arising from the use and occupation of the land.  In this case, if the purchase money for which the *lien* was retained has not been paid, the principle of justice which would exact the expulsion of the vendor, or of his tenants, is not readily perceived or apprehended.  Under such a deed as this, the right of entry, or right of possession, does not accrue against the vendor until all the purchase money is paid.  Till the legal and equitable titles are consolidated in the vendee, he has no cause of action against his vendor for the possession; for, in this suit for the possession, the title has to be tried, and the equity remains in full force as long as there is an unpaid residue of the purchase money.

The judgment is reversed, the cause remanded, and a new trial awarded.

Reversed and remanded.