ROBERT TATE ET AL. v. OSCAR KRAMER ET AL.

No. 24.

**1. Quitclaim—Bona Fide Purchaser.**—A quitclaim vendee can not be an innocent purchaser, because his deed serves him with notice that he is only purchasing the chance of title—such title as the vendor had, and no more. Such notice, or any notice of the fact that there is a better title, excludes good faith from the transaction.

**2. Same — Circumstances of Execution of Deed.** — The vendee, in correspondence with his vendor, agreed to take a quitclaim. He prepared a deed with special warranty, thinking it to be a quitclaim. It was signed. In subsequent litigation, the vendee asserting title as a bona fide purchaser against equitable owners of the greater part of the land, upon the issue whether the deed was a quitclaim, *held*, that it should be construed by the facts attending the transaction—his letters to his vendor, his actual information, his agreement for a quitclaim, the inadequacy in price, etc.

**3. Mistake.**—The vendee knowing the facts, and agreeing to take a quitclaim, but by mistake taking a deed with special warranty " by, through, or under" the vendor. can not claim the benefit of his own mistake, and be exempt from notice imparted by the quitclaim.

**4. Unpaid Purchase Money—Warranty.**—In an action of trespass to try title against parties in possession under warranty deeds executed to them by one affected with notice of a superior equity, the warrantor was made party by the defendants. It appeared that the defendants had paid but a part of the purchase money, and had executed their negotiable notes for the remainder. It appeared that their warrantor still held these notes. The defendants being innocent purchasers recovered the land, and the plaintiffs showing title against their vendor were entitled to recover of the defendants the unpaid purchase money. They would be liable also upon their payment of the notes after notice of the superior title in the plaintiffs.

ERROR from Gillespie. Tried below before Hon. A. W. MOURSUND. Statement is given in opinion.

*Brown & Dunn*, for plaintiffs in error.—Upon the facts proved and found at the trial below, neither Neely nor his vendees, Kramer and Hardt, are bona fide innocent purchasers of the land in controversy for valuable considerations, without notice of the claims and rights of plaintiffs to said land, within the meaning of the equitable rule which protects such purchasers of the legal title against the claims of the equitable owners; and the judgment below should have been for the plaintiffs for seven-eighths of the land sued for, or seven-eighths of the purchase money yet due and owing to Neely, or at least for so much of the purchase money as was due and owing to Neely, not to exceed seven-eighths of the value of the land. Fraim v. Frederick, 32 Texas, 308; Evans v. Templeton, 69 Texas, 377; Perry on Trusts, secs. 217–221; 1 Story Eq. Jur., sec. 64; 2 Story Eq. Jur., sec. 1502; Watkins v. Edwards, 23 Texas, 447; Rodgers v. Burchard, 34 Texas, 441; Milam County v. Bateman, 54 Texas, 153; Richardson v. Levi, 67 Texas, 359.

*Leeky & Pyle*, for defendants in error.—1. The deed from Mrs. M. A. Tate to J. I. Neely was an absolute conveyance of the land, and his attitude is that of an innocent purchaser without notice, unaffected by any latent equity, founded on trust, fraud, or otherwise.

2. Where the owner of land makes a conveyance absolute in form, with a parol trust annexed, a subsequent purchaser from the donee of such trust would not be affected by it, nor is he affected by the fraud of his vendor. 50 Texas, 379; 6 Texas, 489; 53 Texas, 242.

3. Though a purchaser has certain information of some defect in the title to real estate which he proposes to buy, if he pursues a proper inquiry into the truth of such information and ascertains facts which would satisfy a prudent man that such vice or defect does not in fact exist, he will be a purchaser in good faith. Now, in this case grant that the conveyance from Mrs. M. A. Tate to J. I. Neely was of a nature to put Neely on inquiry as to the validity of the title of his vendor, Mrs. M. A. Tate, and if he pursued a proper inquiry into the truth of such information as would have ascertained facts which would satisfy a prudent man that no defects in her title existed, he (Neely) would be a purchaser in good faith, and would not be affected by any parol trust that he had no actual or constructive notice. 9 Texas, 363.

4. Defendant J. I. Neely would not be affected in his title to the land in controversy by any parol contemporaneous understanding between J. C. Brown, receiver of the Tate estate, and Mrs. M. A. Tate, prior to and at the time of the execution of the deed by the said Brown to Mrs. M. A. Tate, that it was to be a deed in trust for the benefit of the plaintiffs in error herein, unless he was actually informed that such was the purpose of the conveyance.

5. Parol testimony is admissible to prove that a deed or instrument,

absolute on its face, was executed and delivered on certain trusts not reduced to writing, and which the grantee promised to perform; but this rule would not apply to a third party who is a purchaser for a valuable consideration without notice, either actual or constructive, as to the existence of such trust.　10 Texas, 159; 27 Texas, 231; 24 Texas, 426; 44 Texas, 445; 44 Texas, 275; 47 Texas, 43; 51 Texas, 257.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of the suit made by plaintiffs in error is correct, and is accepted by the defendants in error.　It is as follows:

"This suit, in form an action of trespass to try title to about 1700 acres of land in Gillespie county, Texas, was brought in the District Court of said county February 10, 1887, by plaintiffs in error against Kramer and Hardt, defendants in error.　February 24, 1887, defendants answered by general demurrer, general denial, and plea of not guilty.　September 23, 1887, the court granted leave to defendants to make their warrantor, J. I. Neely, party defendant.　February 21, 1888, said Neely appeared and filed an answer, making himself party defendant, and setting up, in substance, that at the time he sold the land in controversy to his codefendants Kramer and Hardt, to-wit, on June 19, 1886, he was possessed of the legal title to it, which he had acquired without any notice of the claim or rights of plaintiffs, and for a valuable consideration; that he sold said lands to defendants Kramer and Hardt for a valuable consideration, and that at no time prior to the filing of this suit did he or they have any notice of the claims or rights of plaintiffs, etc.　February 27, 1888, plaintiffs filed their supplemental petition, in which they denied the allegations made by Neely, and averred that he sold said land to his codefendants on a credit, and had not received payment of the price or purchase money therefor, to-wit, the sum of $3800, agreed upon by the defendants; that said sum of $3800 is still due to said defendant (Neely) from his codefendants for said land; that defendants, at the time of their purchase, had notice that said land was held in trust by Mary A. Tate for plaintiffs, who were the owners thereof, and they prayed as in their original petition; 'and further, in case they may not be entitled to recover said land, then that that they have judgment against said defendants for the unpaid purchase money, and interest thereon; also that they have such other and further relief as their case may require.'　On the 28th of February, 1888, the case was tried by the court, a jury being waived, and judgment was rendered that plaintiffs take nothing of defendants, etc.　This judgment was duly excepted to, and notice of appeal given by plaintiffs, and ten days were allowed within which, after adjournment, to make and file statement of facts.　Findings of facts and conclusions of law were filed by the court, and a statement of facts was approved and filed on the 8th of March, 1888."

The plaintiffs have brought the case into this court for revision by writ of error, and assigned errors as follows:

The second assignment of error: "The court erred in the conclusions of law and fact found, and especially:

"1. In finding as a fact (section 5) that Mrs. M. A. Tate conveyed to J. I. Neely the land in controversy, when all the evidence relating thereto, given by said Tate and defendant Neely, with Neely's letters, and conclusions of the court in section 10, show that both said parties fully intended and understood the deed to be only a quitclaim of whatever right she might have to the land, and not a conveyance of the land, said land being worth, as shown, $3600, and the price paid by said J. I. Neely to Mrs. M. A. Tate being only $100.

"2. In finding as facts (section 6, et seq.) that defendant Neely conveyed to the other defendants by warranty deeds the land sued for, and thereby vested in said codefendants the legal title to said land, when, as the evidence shows, said Neely only made a conditional contract to sell the land to his codefendants, and that codefendants had paid only a small fraction of the agreed purchase price for the land, and were wholly in default as to the entire balance, thereby renouncing claim or title to the land.

"3. In finding as law (sections 2 and 3, conclusions of law) that the deed from Mrs. M. A. Tate to defendant J. I. Neely vested in said Neely the title to the entire tract of land sued for, 'and the defendants Kramer and Hardt could not be affected by understandings, etc., between said Tate and Neely,' since it was shown by all the evidence relating thereto, viz., the evidence of said Neely and Tate, and the contracts of sale by said Neely to his codefendants, that defendant Neely bought only such claim as Mrs. M. A. Tate might have, paid only $100 therefor, when the market value of the land was $3660 at least, and that defendants Kramer and Hardt had paid only $530 of said market value, made default as to the balance, and forfeited or relinquished all claim to the land."

The third assignment of error: "The judgment rendered in this cause is erroneous, contrary to the law and the evidence adduced, in that it is for the defendants when it should have been for the plaintiffs for at least seven-eighths of its value, as prayed for in plaintiffs' first supplemental petition, as is shown by all the evidence adduced on the trial, and especially by the evidence and conclusions of fact hereinbefore specified."

The court's findings of facts and conclusions of law are as follows:

*Findings of Facts.*—"1. In 1873 plaintiffs and their mother, Mrs. M. A. Tate, were the heirs of Waddy Tate, Jr., and each entitled to an equal share of his estate.

"2. In a suit had between plaintiffs herein and Mrs. M. A. Tate as heirs of Waddy Tate, Jr., who was one of the heirs of Waddy Tate, Sr., and the other heirs of said Waddy Tate, Sr., J. C. Brown was appointed

receiver, and ordered to sell the property belonging to the estate of Waddy Tate, Sr., for partition.

" 3. At this sale, had in 1874, the premises in controversy were bid in by the attorney of M. A. Tate and her children, the plaintiffs herein, and the purchase money for same charged against their joint interest in the estate of Waddy Tate, Sr.

" 4. By direction of the attorney for plaintiffs and Mrs. M. A. Tate, a deed for this premises was executed by said receiver, J. C. Brown, to Mrs. M. A. Tate alone, which deed was recorded in Gillespie County, December 22, 1875.

" 5. On November 26, 1884, Mrs. M. A. Tate conveyed the premises conveyed to her by said Brown to defendant J. I. Neely, by deed with special warranty of persons claiming by, through, or under her, which deed was recorded in Gillespie County on April 25, 1885.

" 6. On June 19, 1886, defendant J. I. Neely conveyed by general warranty deeds, retaining, however, vendor's lien, to defendant Oscar Kramer 640 acres of the premises conveyed to him by Mrs. M. A. Tate, and to Herman Hardt the balance of said premises.

" 7. On February 10, 1887, plaintiffs filed this suit.

" 8. In 1878 the land was sold for taxes, and taxes have ever since been paid by purchaser at tax sale, and after he conveyed his claim to defendant Neely taxes were paid by said Neely.

" 9. Defendant J. I. Neely paid to Mrs. M. A. Tate the consideration expressed in her deed to him, and had at the time no actual notice of any claim on part of plaintiffs.

" 10. Mrs. M. A. Tate intended the conveyance to J. I. Neely as a quitclaim, and defendant J. I. Neely agreed to receive a quitclaim.

" 11. Defendants Kramer and Hardt paid to Neely so much of the purchase money as shown by their deeds, and executed negotiable notes for remainder as shown by said deeds."

*Conclusions of Law.*—" 1. Mrs. M. A. Tate was invested by the deed from J. C. Brown to herself with the legal title to the land, unvalued, in this litigation, holding same, however, as an undivided seven-eighths of same in trust for plaintiffs herein, who were the equitable owners of said seven-eighths interest.

" 2. The defendants Oscar Kramer and Herman Hardt having purchased said land from J. I. Neely for a valuable consideration, without notice, actual or constructive, of plaintiffs' equitable claim to same, and acquired from said Neely the legal title to same, are entitled to judgment quieting their title and possession of same.

" 3. The conveyance by Mrs. M. A. Tate to J. I. Neely being on its face a deed to the land and not a quitclaim to grantor's interest therein, it passed the legal title vested in M. A. Tate to same; and defendants Kramer and Hardt could not be affected by any private understanding

between Mrs. M. A. Tate and J. I. Neely as to the effect of said conveyance, it not being shown that they had any notice, actual or constructive, thereof.

"4. Plaintiffs not being entitled to recover as against defendants Kramer and Hardt, judgment will be rendered that plaintiffs take nothing by their suit and that defendants recover their costs."

The findings of fact require some explanation, qualifications, and additions, as shown by the evidence.

The receiver, J. C. Brown, bought the land at the sale made by him for $87, for Mrs. Tate and her children, and the amount, so reported to the court by the receiver, was ordered, according to the rights of the parties, to be paid to Mrs. Tate and children in equal amounts. The money was never paid. The intention was that Mrs. Tate and her children should own the land equally and jointly. No money was paid Mrs. Tate for the land or to the parties by the receiver, as entitled, but the deed by the receiver was made to Mrs. Tate, the children having by resulting trust seven-eighths of the land, and she one-eighth.

Tate bought in a tax title to the land from one Schuchard for $275; the record discloses nothing of the regularity of the tax title but a tax deed by the sheriff of Gillespie County to Schuchard, and a deed from him to Neely, to the admission of which plaintiffs objected, because they did not show a legal assessment of the land for taxes, nor other precedent requisites authorizing the tax sale. (The clerk states that these deeds were missing since the filing of the petition for writ of error, and could not be found in his office.)

The sale by Schuchard of his tax title was made over two years from the date of his purchase at the sale.

Neely's purchase from Mrs. Tate was on the 26th day of November, 1884, she at the time living in Yazoo County, Mississippi; he paid her $100 for the entire 1700 acres; he sold the land to Kramer and Hardt, defendants, on the 19th of June, 1886, for $3660—$536 in cash and $3124 on time, secured by their negotiable promissory notes, the deeds reciting the facts, and retaining a vendor's lien upon the land sold to each to secure the unpaid balance.

This suit was filed February 10, 1887, and at that time, and at the time of the trial, Kramer and Hardt still owed Neely the amount of the notes.

It was understood between Mrs. Tate and Neely at the time of her deed to him, that she was to make him a quitclaim deed for her claim to the land, but he had no blank form for quitclaim deed, and used a form of general warranty, inserting after the warranty clause, "by, through, or under me only," believing that this language made the deed a quitclaim, as he told Mrs. Tate. The deed purports to convey the land. There was some correspondence between them about the purchase, and two

of his letters to her were in evidence, but the clerk states, in a note, that they are missing and could not be copied. He sent the deed to her to sign.

His agreement with her was to buy her claim and take a quitclaim, and he believed he had done so. He knew of no title in the children, or other title, except the tax title which he owned.

The facts leave no doubt that Neely contracted for and intended to contract for a quitclaim deed from Mrs. Tate—a quitclaim in its strict legal sense; that is, for her claim only. His deed is in form of a conveyance of the land, it is true, and upon its face is not a quitclaim, but he is not in an attitude to insist upon the form of his deed. He claims to be an innocent purchaser, and contends that he is so because his deed purports to convey him the land, and not a mere chance of title. He insists upon the letter of the law in construing the deed, while it is shown by his own testimony that it misrepresents the facts and is false. His letters to Mrs. Tate evidently contained the agreement that he was to have a quitclaim, as he swears he told her he was to buy her title only, he being in Texas and she in Mississippi. It would work a fraud upon her children to refuse to give effect to the agreement.

A quitclaim vendee can not be an innocent purchaser, because it serves him with notice that he is only purchasing the chance of title—such title as the vendor has, and no more. Such notice, or any notice of the fact that there is a better title, excludes good faith from the transaction. To be an innocent purchaser the vendee must in good faith pay a valuable consideration, without notice of outstanding legal or equitable rights.

His agreement to take a strict quitclaim has the effect to give him notice. His deed should be construed upon this question by all the facts attending the transaction—his letters, his actual information, his agreement for a quitclaim, the gross inadequacy of consideration, and any other circumstance tending to show notice and the absence of good faith.

He testifies, that he was to have only Mrs. Tate's title, that he thought or believed the deed was a quitclaim, and that the special warranty made it so.

Under such circumstances he should not be allowed to take advantage of the form of the deed to establish good faith. He was himself responsible for the *mistake* in the deed; he knew what a quitclaim implied—title of the vendor only; he was in the position of one who had all the notice a quitclaim could give, with a full understanding of what such title meant—notice, and want of good faith.

He asks to be protected upon equitable principles. These principles do not apply in his case. He is not what he claims to be—an innocent purchaser. He should not by force of legal rules of construction (of his deed) be allowed equitable protection when the undisputed facts show that he is not within the equity rule invoked.

We are of opinion that he had full notice of the character of title he was receiving, qualified and controlled as it was by the attending circumstances. Under such title he could not be a purchaser in good faith. Harrison v. Boring, 44 Texas, 262; Taylor v. Harrison, 47 Texas, 461; Milam County v. Bateman, 54 Texas, 155; Richardson v. Levi, 67 Texas, 359; 2 Pome. Eq. Jur., sec. 753.

Finding that Neely is in the same attitude of a vendee in a quitclaim, he is required to take notice of *all other claims to the land.* He can not say he knew of one, the tax title bought in by himself, and therefore did not know of the equitable title in the plaintiffs. His position is that of one having notice of all titles. The question is not one of being merely put upon inquiry; the notice is absolute and conclusive as to all claims.

It was in proof that the greater part of the purchase price of the land had not been paid to Neely by Kramer and Hardt, to whom he had contracted a sale of the land for $3660. It seems the notes are negotiable promissory notes, but at the time of trial they were still owned and held by Neely. They are not irrevocably bound to pay him these notes, and if they should do so after notice of plaintiffs' rights, they would not be acquitted of their obligation to pay the true owners at least the amount unpaid at the time of notice. To this extent they would not be innocent purchasers.

Plaintiffs' pleadings prayed for relief appropriate to the case, judgment against them (Kramer and Hardt) for the unpaid purchase money, but the court below refused it. 2 Pome. Eq. Jur., secs. 754, 755, 756; 1 Story Eq. Jur., sec. 64; Perry on Trusts, secs. 219, 221; Caldwell v. Fraim, 32 Texas, 310; Evans v. Templeton, 69 Texas, 375.

The judgment of the lower court should be reversed and remanded, and it is so ordered.

*Reversed and remanded.*

Delivered November 2, 1892.